Good morning, Your Honors. Good morning. This is... Would you identify yourself just for the record, please? I'm sorry. That's okay. Ira Cohen. I'm an attorney for the appellant, especially appearing for this argument. It's an honor. First time arguing before the Ninth Circuit. That's okay. It's our first day, too. It's my first appearance before the Ninth Circuit also. I will try to be brief. This is an appeal from the granting of a motion for summary judgment, and it involves a case where the primary claim is that the appellant was wrongfully terminated, but the termination was pretextual. And with that basic set of facts in mind, it appears that the standard of review from denial of a motion, rather than the granting of a motion for summary judgment, is that the facts are reviewed by the court de novo. So with that in mind, I'd like to start specifically at what I think is the seminal question. The seminal question was asked of Mr. Levy, representing appellant, at the hearing on the motion for summary judgment. It was asked straight away, and unfortunately, I must concede it was not adequately answered. The question essentially was, what is the underlying statutory or constitutional violation that is predicated to your claim of wrongful pretextual termination? And the court specifically stated, you can't get to pretext until you identify the statutory or constitutional violation that has occurred. And Mr. Levy's response was, it's right there in the excerpts on appeal. Mr. Levy's response is, I can't supply any. Well, Mr. Cohen, in terms of wrongful termination, he was an employee at will. There's no dispute about that. And under California law, an employee at will can be terminated for any reason or no reason, except for if he were a member of a protected class, he would be fired because of his race or religion or sexual orientation. And there is nothing in the record that would indicate that he was part of a protected class or there was any public policy why he couldn't be terminated. What's the public policy? That's precisely what I think I can supply right here and now and that I think a de novo review would find, in fact, justified by the totality of the record. Specifically, what is the public policy? The public policy is that all members of the public are entitled to resolve disputes in the courts of the state of California or the federal district courts, whichever has the appropriate jurisdiction. The employer, in this case, has a long history of litigation, adversarial litigation against the appellant employee's parents. And I think reviewing the record in totality, the termination was in retaliation for the parent's sins. And there is, I think, and so your claim is based on what? On the physical protection clause or the substantive due process that somehow we're infringing upon familial relationships? No, not precisely. My contention is that the employer is retaliating for Mr. Adjian's parents' use of the courts to engage in commercial disputes with the employer. Right, but he's an employee at will. He can be fired for any or for no reason except for a very narrow band of things that will violate public policy, which Judge Bartle has articulated. So now I'm trying to fit your argument into the framework that Judge Bartle has supplied you, that we're usually looking for some kind of constitutional or statutory value that rises to the level of public policy that would make it utterly unjust and contrary to our values to permit. So what's going on here that rises to that level? Bank has, in the vernacular, the bank has a beef against mom and dad. Well, that's right. What you're suggesting is it was the complaining parties are the parents. That is, they're being denied their day in court because you said people have the right to have their cases heard in state or federal courts. And so are you suggesting the parents are being intimidated because their son got fired, so now they know that they shouldn't have been suing this company? No, just the opposite. What I am contending is I believe the record supports a case, that a case can be made that the bank, being upset at the lack of resolution in its favor of underlying litigation as between the bank and mom and dad, that the bank is retaliating against their employee, who is the son of the people that they are attacking. But what you're really saying is that if I have an employee at will and I decide I don't like the employee's parents for whatever reason and then I fire the employee because I don't like the employee's parents, that that would be against public policy under California law. If it's just I don't like the employee's parents because I don't like the way they dress, I think that's a colorable disposition. That would be permissible. I believe that would be permissible. But if the underlying rationale is I'm mad at the employee's parents because they are asserting legal rights in the courts of the state of California. So long as I fire the employee before the parents sue me, I'm fine. Well, the parents have sued long before. Well, I understand. But the point is you're making a distinction between whether the parents have sued or not. So if you don't like the parents and they haven't sued you, that's fine. But if the parents have sued you, then you can't fire the child. I think that that is true if, as the record here supports, that really is the reason. And here there was an investigation conducted. The employee was apparently a well-respected employee and the bank, having assumed prior debts in the course of a takeover, the bank concluded that Mr. Adjian's parents were involved in some sort of a scheme. And I have no opinion as to the merits of the contention of the parents or the bank. But they undertook an investigation, and there is some evidence in the record in the course of the investigation that an investigator said to Mr. Adjian, make a decision, choose between your parents, your family, and your career. I know your time is short. I have a question about the defamation count. Now, the only allegedly defamatory statement was the statement that the bank sent to FINRA about the termination on the U-5 form. Correct? Correct. All right. Now, if in fact FINRA is a regulatory body that's encompassed within Section 47B of the California Civil Code, there's an absolute privilege, is there not? I think that the privilege is qualified under 47C. No, I'm talking if it comes under 47B. If they're required to file. And they are required to file. Any time the bank terminates an employee, the bank is required to file a termination statement with FINRA, is it not? Right. But in this case, it appears that they determined to prepare a report substantiating some sort of involvement. Who was going to prepare the report? The bank and or its investigators prepared a report to be filed with FINRA that said we're terminating him. We believe that he may have been involved with family members in an unlawful scheme. No, but if FINRA is a regulatory body under 47B of the California Civil Code and the statement was made to a body that is encompassed there, then there's an absolute privilege, is there not, under the California statute? There would be an absolute privilege, I think, if the report wasn't filed in the first place out of a malicious retaliatory. Where does it say that in the statute? It says other sections of the statute talk about malice. 47B doesn't. In other words, if I report somebody, I tell the police that somebody robbed the store down the street and I'm doing it maliciously, I know that darn right well the person didn't do it. That is absolutely privileged under the California statute. Absolutely. Well, then why is it different in this case? I think that it's different in this case because the report was filed for the purpose of protecting the bank from potential consequences such as the filing of this lawsuit. Beyond that, I just don't have any more. I truly believe that 47C is really more applicable and I understand that I may have to agree that you disagree. Thank you. Okay. Thank you, Mr. Cohen. We have used all of your time. I will allow you one minute for rebuttal if you would like it. You don't feel obligated to use it, but there will be a minute available for you. Thank you. Thank you. Another from the bank. Thank you, Your Honors. Richard Chen on behalf of the appellee. Your Honor, I will address by the order the claims that are at issue here, the first one being the first claim for the wrongful termination in violation of public policy. I think the district court did get the ruling correct, namely that as the appellant has just stated, they have not so far identified any statutory or constitutional basis that supports the public policy claim. It seems what they are trying to do is to litigate their claims brought by the parents against J.P. Morgan Chase Bank. I think what's notable here is that plaintiff actually had never conducted any form of discovery, whether it be depositions of any of the decision-makers or elsewhere. They were not able to second-guess why the decisions were made or that any of the decision-makers even had any knowledge that the parents had litigated against J.P. Morgan or any unlawful motive that would justify the basis for the wrongful termination claim. As the court had stated, there is no dispute here that he was an at-will employee. By that very fact, we believe that the first claim for wrongful termination in violation of public policy is defeated. Nonetheless, as the court had pointed out, the district court had pointed out, they've also not established any constitutional or statutory basis. So on those grounds, we believe summary judgment in favor of the appellees as to that claim should be affirmed. With respect to the defamation claim, there were a number of hurdles that the appellants were not able to overcome, the first being that plaintiff had made omissions in deposition that there was no false statement of fact. In fact, he testified that it was merely the opinion of J.P. Morgan Chase Bank regarding the reasons for his termination as well as the statements made to FINRA. That's the key point. This is the very first element that they could not even overcome. Aside from that, the communications are privileged. The communications of the people that were involved or knew about the reasons for the termination and the investigation at J.P. Morgan Chase Bank consisted of people that were human resources, his direct managers, as well as the investigator that did the investigation. Well, there's no claim that that was defamatory. What's that? The plaintiff is not claiming that it was defamatory to make statements within the J.P. Morgan family. It's only the statement to FINRA that's the subject of the defamation claim. Understood, Your Honor. I thought that, at least based on the, in their opposition to the summary judgment, as well as the allegations in the pleading, they had mentioned that there were statements made between the managers regarding the reasons why they were terminated. They may have done that initially, but I think that's been waived at this point. Understood. And I think that Mr. Cohen indicated as much. So on 47B, which we've discussed with counsel, under the Hagberg case of the California court, it says 47B is an official proceeding privilege that applies to a communication intended to prompt an administrative agency charged with enforcing the law to investigate or remedy a wrongdoing. Now, is there any evidence that that was the purpose of filing the U-5, or was it simply a notice that had to be given, which in that case would more appropriately perhaps invoke 47C, as he argues, the qualified privilege? Where's the evidence that the purpose was to trigger an investigation or remedy something? So we do believe that 47B does apply, namely based on the declaration of Adam Schultz, who was the person that submitted the statement to FINRA. Now, whenever there is a registered agent of a bank, which in this case Mr. Ajean was a registered agent, and there happens to be a subsequent termination, the banking institutions have an obligation to follow the FINRA instructions. I understand that. But that's not the purpose. That doesn't come in 47B's absolute privilege unless the purpose of filing it was to stimulate an investigation. Kind of a complaint, in effect. In this case, you just stated the issue for me, which is they did it because they had to. So why wouldn't this be under 47C? Why wouldn't it be under 47C? Yeah. We believe it falls under both, actually, under 47C and B. So why do you win under 47C? Because even under a qualified privilege, which are correct, there's other district courts, including the Rosenberg Court in the Second Circuit, that have found that U5 forms are a privilege, an absolute privilege. You have to make a showing of recklessness, and that's the key here. The statements that's been attributed through the FINRA statement was that he was terminated because he was unable to fully substantiate how real estate property was transferred to him. Again, they've made no showing that there was any recklessness by Adam Schultz in providing that statement. That was an accurate statement. He relied solely on the investigation that was provided to him, and there's nothing where he did it out of any reckless disregard of Mr. Ajean. He didn't even know Mr. Ajean. On top of that, I still go back to the fact that part of the elements of defamation is that he has to show damages. And based on the undisputed material facts, starting with undisputed fact number 37 through 43, Mr. Ajean testified that he's not aware of anybody that had talked to FINRA, no prospective employers, no one that he has any affiliation with that knew, based on what Mr. Schultz disclosed to FINRA, other than FINRA, nobody else knew. In fact, FINRA took no actions, as Mr. Ajean admitted, and thus he has not met his burden to show any proof of damages to create a tribal issue of fact. Because the appellant only addressed these two claims, we submit to the district court's ruling. And for those reasons, we believe the district court's ruling granting summary judgment to JPMorgan Chase Bank should be affirmed. Thank you. Thank you, Mr. Chan. Very briefly, I just reread the ruling of the trial court below, and it makes no reference whatsoever to 47B. I don't think 47B was ever really raised. Well, there's one sentence which she doesn't specifically reference that, but it encompasses the language of 47B. She has two, I think, bases. And that was my primary observation here, is that the opinion. Let's assume 47C. What's your answer to failure to allege damages? Well, if we concede that 47C is the appropriate provision of law that applies, then the standard of malice would apply. And malice, in my experience, is always a statement, a state of mind, and that the totality of the evidence viewed by the jury is what ultimately determines whether or not there is malice. The initiation of an investigation of this employee based on the acts of his parents, the alleged threat to choose between your family and your career, that and a number of other factors could, I think, in the minds of a reasonable jury, lead them to conclude that the FINRA report was, in fact, generated out of malice. That's not answering my question. So getting beyond that. You had to allege damages. The FINRA report essentially accuses the employee of being involved in a criminal scheme. What are the damages, counsel? What are they alleged? It's defamation per se, and under substantive California law, we permit recovery for defamation per se without any evidence of special damages. That's the best that I can do at this point. So you're arguing that the bank accused him of a crime, and that type of defamation is defamation per se. Is that your argument? Per se, and that defamation per se does not require any showing of special damages. Okay. Thank you, counsel. Beyond that, I have nothing. Thank you. Okay. Thank both counsel for the argument. G.N. v. J.P. Morgan. Chase will be submitted.
judges: Fisher, Bybee, Bartle